IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 18, 2021 Session

## STATE OF TENNESSEE v. ARIANA ELIZABETH MAJOR

**Appeal from the Circuit Court for Montgomery County**
**No. 2019-CR-1374    Jill Bartee Ayers, Judge**
_____

### No. M2020-01142-CCA-R3-CD
_____

The State of Tennessee appeals the Montgomery County Circuit Court's order granting the Defendant's motion to suppress evidence recovered during the search of her car. On appeal, the State contends that the trial court erred because the police dog performed a reliable "free air sniff," which resulted in probable cause to search the Defendant's car. We dismiss the appeal because the State is not entitled to an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3(c) because the record fails to reflect that the trial court dismissed the relevant indictment counts.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; John W. Carney Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellant, State of Tennessee.

Gregory Smith (on appeal), and Chase Smith (at trial), Clarksville, Tennessee, for the appellee, Ariana Elizabeth Major.

### OPINION

In December 2019, the Defendant was indicted for criminal impersonation; driving while her license was canceled, suspended, or revoked; possession with the intent to manufacture, sell, or deliver methamphetamine; possession with the intent to manufacture, sell, or deliver heroin; possession with the intent to deliver or sell fentanyl; and possession of drug paraphernalia.

Clarksville Police Officer Robert Dill submitted an affidavit of complaint in connection with the Defendant's arrest. The affidavit reflects that on September 9, 2019, at 12:21 a.m., Officer Dill initiated a traffic stop of the Defendant's car for the failure to use a turn signal. The Defendant, who was alone, told the officer that her name was Ana Outlaw and provided a date of birth, but "no valid information could be found" for a person with this name. The Defendant consented to a search of her purse, and the officer found a "card" reflecting the Defendant's sister's name. Ultimately, the officer identified the driver as the Defendant, who admitted she lied about her identity because of an outstanding probation violation warrant, which was confirmed through a police database. A records check likewise reflected that the Defendant's driver's license was revoked on September 26, 2018. The Defendant was "placed into custody" for the probation violation warrant, driving while her license was revoked, and criminal impersonation.

A second affidavit of complaint was submitted by Officer Holden Hudgin and reflects that during the course of the traffic stop, Officer Dill asked for the Defendant's consent to search the car. The Defendant declined. Montgomery County Deputy Christopher Owens arrived at the scene with a police dog, which signaled for the presence of "narcotics" inside the Defendant's car. A search of the car revealed digital scales; a cut straw; and substances believed to be heroin, methamphetamine, and fentanyl under the driver's seat. The Defendant's driver's license was also found under the seat. The Defendant was charged for offenses related to the unlawful possession of controlled substances and drug paraphernalia.

After the return of the indictment, the Defendant filed a motion to suppress the evidence found during the search of her car. She argued that the officers lacked probable cause to search her car because the police dog could not distinguish between the smell of hemp,[1] a lawful substance, and marijuana and that, as a result, the dog's signaling for the presence of narcotics was unreliable.

At the suppression hearing, Montgomery County Sheriff's Deputy Christopher Owens testified that he had been the police dog's handler for more than three years. He said he obtained annual certifications to work as a police canine handler. He said that the dog in the present case had received training, as well, and that the dog was trained and certified to detect the presence of methamphetamine, marijuana, heroin, and cocaine. Relative to the dog's training to detect marijuana, Deputy Owens said that the dog was

---

[1] Since April 4, 2019, the possession of hemp has been legalized in Tennessee. Hemp is defined as Cannabis sativa containing not more than 0.3% Tetrahydrocannabinol (THC). Marijuana is defined as Cannabis sativa containing greater than 0.3% THC. *See* T.C.A. §§ 39-17-14 (2019); 43-27-101 (Supp. 2020).

"imprinted by Moochie[2] with [straight] marijuana." Deputy Owens understood that hemp was a legal substance and stated that the dog had only been trained to detect marijuana. When asked if it were possible the dog might signal for the presence of narcotics if the substance was hemp, not marijuana, Deputy Owens stated, "He can." Deputy Owens stated that he could not determine which substance the dog signaled during a sweep but that any signal was related to the four substances the dog was trained to detect.

Deputy Owens testified that Officer Dill requested a "free air sniff" in the present case. Deputy Owens said that after he arrived at the traffic stop, he "tried to run [the police dog] on it." He said that he "had to empty [the dog] because he was not focusing. Once [the dog] focused, he indicated, and we searched" the car. When asked if he knew which substance the dog signaled during the sweep, Deputy Owens said the dog signaled for the presence of any of the four substances the dog was trained to detect. Deputy Owens agreed that marijuana was not found inside the Defendant's car.

On cross-examination, Deputy Owens testified that he began training with the police dog in January 2017. He agreed that in 2017, it was unlawful to possess hemp. He said that he and the dog had conducted sweeps more times than he could recall. He agreed that there had been incidents in which the dog had signaled for the presence of narcotics but that none were found upon conducting a search. He agreed that the dog could signal for the presence of narcotics based upon "transfer odor" if the smell of a substance lingered inside a vehicle.

Deputy Owens testified that Moochie was the last name of the person who worked for the vendor involved in the police dog's imprinting process. Deputy Owens could not explain the imprinting process but said that Moochie imprinted the dog and that afterward, Deputy Owens trained with the dog. Deputy Owens said he was not present when the dog was "certified." When asked if the dog was trained to smell a particular compound found in marijuana, Deputy Owens said, "All I know is he's trained on marijuana."

The police dog's training records were received as an exhibit and reflect that the dog received a K-9 Narcotic Detection Certification on May 20, 2019 by Officer Owens. The certification reflects that the dog was trained to detect marijuana, methamphetamine, cocaine, and heroin. The records contained more than fifty training exercises, most of which were successful. Many of the exercises involved non-narcotic items, including flashlights and shotgun shells. Other exercises involved the use of narcotics. On February 21, March 17, March 23, and April 13 of 2018, the dog successfully located narcotics hidden in various vehicles. In 2019, the dog likewise successfully located narcotics during

---

[2] The police dog training records reflect the trainer's name as "Moochi." We use "Moochie" as reflected in the transcript.

additional coordinated "drug hides" on May 11, August 3, February 13, February 27, April 17, May 15, August 15, August 21, and December 18. The dog successfully located narcotics on January 20 and March 11 of 2020. However, on February 12, 2020, the dog had difficulty locating heroin inside a closed container. The dog located the heroin after the container's lid was removed. The records do not contain entries related to the dog's field work after training.

On July 28, 2020, the trial court entered a written order granting the Defendant's motion to suppress. The trial court found that the police dog was trained to detect marijuana, methamphetamine, cocaine, and heroin but was not trained to distinguish between hemp and marijuana. The court found, based upon Officer Owens's testimony, that the dog could have signaled for the presence of either of the controlled substances inside the Defendant's car and that the dog would not have known the difference between hemp and marijuana. The court found:

> . . . Deputy Owens testified that [the dog] had no training on the distinction between illegal marijuana and legal hemp and would not be able to know the difference. Based upon the evidence presented of the K-9's training and track record in this matter, the Court does not find reliability of the canine to support probable cause.

The appellate record only contains one judgment form, which was for Count 1, criminal impersonation. The judgment, entered on August 20, 2020, reflects that the charge was dismissed. The judgment, likewise, reflects in the special conditions section that Count 2, driving while her license was canceled, suspended, or revoked; Count 3, possession with the intent to manufacture, sell or deliver methamphetamine; and Count 4, possession with the intent to manufacture, sell or deliver heroin were dismissed, as well. The judgment form does not reflect that Count 5, possession with the intent to deliver or sell fentanyl, and Count 6, possession of drug paraphernalia were dismissed. On August 26, 2020, pursuant to Tennessee Rule of Appellate Procedure 3(c), the State filed a notice of appeal of "the order of dismissal filed August 20, 2020."[3]

On appeal, the State contends that the trial court erred by granting the Defendant's motion to suppress. The State argues that the police dog was trained to detect four controlled substances and that the dog's signaling for the presence of contraband regardless of whether the signal was related to marijuana or hemp provided a sufficient basis to establish probable cause to search the Defendant's vehicle. The State's focus on appeal is

---

[3] Although the notice of appeal states that an order of dismissal was "filed" on August 20, 2020, the State's appellate brief states that an order of dismissal was "entered" on August 8, 2020. The record does not contain an order dismissing the relevant indictment counts.

limited to the drug-related charges in Counts 3, 4, 5, and 6 stemming from the search of the Defendant's car.

The State is entitled to an appeal as of right, in relevant part, from the granting of a motion to suppress evidence only when the "substantive effect of the order suppressing or excluding evidence results in dismissing the indictment, information, or complaint." *State v. Meeks*, 262 S.W.3d 710, 719 (Tenn. 2008); *see* T.R.A.P. 3(c)(1). Our supreme court has determined that to "trigger" Tennessee Rule of Appellate Procedure 3(c)(1), "the order suppressing or excluding evidence must produce the entry of an order dismissing an indictment, information, or complaint." *Meeks*, 262 S.W.3d at 720. Although "the entry of a final order dismissing the indictment, information, or complaint is required for an appeal as of right [pursuant to] Rule 3(c)(1), . . . the State may still seek interlocutory appellate review of a trial court's order suppressing or excluding evidence" pursuant to Tennessee Rules of Appellate Procedure 9 and 10. *Id*.; *see State v. Scarborough*, 201 S.W.3d 607, 612 n.2 (Tenn. 2006); *State v. Gilley*, 173 S.W.3d, 1, 5 (Tenn. 2005).

In the present case, the record does not reflect the entry of an order dismissing the relevant indictment counts upon the trial court's order granting the Defendant's motion to suppress the drug-related evidence obtained during the search. Although the State's notice of appeal and appellate brief assert that the trial court entered an order of dismissal on different dates, the record does not contain an order dismissing the relevant indictment counts. Furthermore, based upon the single judgment form for the criminal impersonation charge, the record does not reflect that Counts 5 and 6, relating to methamphetamine and heroin, have been dismissed. The motion hearing transcript does not reflect that the parties and the trial court discussed the impact of the court's suppression ruling on the relevant indictment counts. Because the record does not reflect that the indictment has been dismissed, the State is not entitled to an appeal as of right pursuant to Rule 3(c)(1). *See Meeks*, 262 S.W.3d at 720; T.R.A.P. 3(e)(1).

Interestingly, the judgment form reflects that Counts 1 and 2, criminal impersonation and driving while her license was cancelled, suspended, or revoked, respectively, were dismissed but were unrelated to the drug-related evidence suppressed by the trial court. The evidence at issue was connected to the four drug-related charges. The Defendant conceded at the motion hearing that the police initiated a lawful traffic stop after she failed to utilize a turn signal. She, likewise, did not dispute that she provided the officer with a false identity and that she was driving while her license had been revoked. The Defendant only challenged the validity of the search of her car, which resulted in the discovery of multiple controlled substances and drug paraphernalia. The court's order granting the motion to suppress was limited to the evidence related to indictment Counts 3, 4, 5, and 6. As a result, the court's granting of the motion to suppress could not have resulted in the substantive effect of dismissing indictment Counts 1 and 2. These counts

remained viable charges unaffected by the court's order granting the motion to suppress. However, for reasons not apparent in the record, the criminal impersonation and driving while her license was cancelled, suspended, or revoked charges were dismissed, and, as we have previously stated, the record does not reflect that Counts 5 and 6, relating to methamphetamine and heroin, have been dismissed.

Regardless of whether Counts 5 and 6 have been dismissed and of the reasons for dismissing Counts 1 and 2 when the suppressed evidence was unrelated to these counts, the record reflects the trial court's ruling on the motion to suppress did not have the substantive effect of resulting in a dismissal of all of the relevant indictment counts, and an order dismissing the relevant indictment counts is not contained in the record. Based on the record before us, Counts 1 and 2 remained viable charges after the motion to suppress was granted, and the record does not reflect that Counts 5 and 6 were dismissed after the evidence was suppressed.

Upon consideration of the foregoing and the record as a whole, we dismiss the appeal.

_____
ROBERT H. MONTGOMERY, JR., JUDGE